IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 2:06-cr-19 |
| v. | ) | |
| | ) | |
| CHESTER WHITE also known as | ) | |
| LAWRENCE WHITE | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

Defendant Chester White ("Defendant") has been charged with a violation of 18 U.S.C. § 922(g)(1), *i.e.*, possession of a firearm by a convicted felon. Before the court for consideration and disposition is Defendant's MOTION TO SUPPRESS EVIDENCE (*Document No. 49*). The government has filed a response (*Document No. 53*). The Court conducted an evidentiary hearing on May 8, 2007. The motion is ripe for disposition. After considering the filings of the parties, the record evidence and the relevant statutory and case law, the motion to suppress will be denied.

On September 16, 2005, during the course of a traffic stop, officers discovered a firearm under the front passenger seat of the vehicle which the Defendant had occupied at the time of the stop. Defendant contends that the officers did not have probable cause to initiate the vehicle stop. Defendant also challenges the credibility of the officers' testimony.

Officer James Williams, a Pittsburgh Housing Authority police officer, testified at the hearing that at approximately 19:46 hours (7:46 pm) on September 16, 2005, he was conducting a high resolution video surveillance of a section of the Addison Terrace public housing project on Bentley Drive in the Hill District of Pittsburgh. At that time, he observed a grey Ford Taurus drive up to a housing unit with Defendant in the passenger seat. The car parked and both the driver and Defendant went up to and entered a housing unit for 3-5 minutes. During this period, Officer Williams called his dispatch desk to check the vehicle registration and license plate #FSV9382 of the Ford Taurus. Government Exhibit 1 reflects that the reply information was received at 19:49 hours (7:49 pm). Officer Williams testified that the results of the PennDOT

database search were immediately communicated to him by radio from the dispatch desk.  The report informed that the license plate was registered to a 2005 Toyota sedan automobile owned by PV Holding Company and leased to AVIS, but not a Ford Taurus.[1]  At about the same time, the previous occupants of the Ford Taurus returned from the housing unit, got into the vehicle and started to drive away.  Williams immediately left his surveillance post, went to his nearby patrol car and followed the Ford Taurus to effect a traffic stop.   Williams, with roof lights activated, caught up to the Ford Taurus which then pulled into a nearby parking lot and stopped.  The driver exited the vehicle and walked 5-8 feet away before complying with Williams' order to get back into the vehicle.  Williams, observing Defendant through the window of the vehicle, saw him make a movement which appeared as though he had pulled an object out of his waistband and then placed it under the front passenger seat.  Williams then remained with his gun drawn at the left rear corner of the vehicle awaiting backup support officers.  Moments later when a City of Pittsburgh police officer arrived, followed shortly by fellow Authority Officer, Sergeant Douglas Butler, Williams removed the driver from the car, patted him down, and obtained his drivers license.[2]   Sergeant Butler immediately approached the passenger side of the vehicle apparently unseen by Defendant in the passenger seat.  While approaching, he observed Defendant place his right hand and then his left hand between his legs extending toward his feet.  Sgt. Butler then drew his weapon, removed Defendant from the vehicle, saw the butt end of a gun on the floor and recovered a Beretta pistol from under the front passenger seat.[3]

---

[1] In hindsight from the testimony of a later investigation, it appears that Avis Rental Car had submitted an application on August 31, 2005 to transfer the subject plate registration from a 2005 Toyota to a Ford Taurus, but that paperwork had not yet apparently been inputted into the PennDOT computer database.

[2] The record reflects that the computer report on the drivers license/registration check occurred at 19:56 hours (7:56 pm), or approximately seven minutes after the initial report which reflected the discrepancy between vehicles with the license plate and registration.

[3] Sergeant Butler testified at the hearing that through earlier surveillance he had observed Defendant, while at Addison Terrace, make several adjustments to the waistband area of his

The Court finds and rules that the officers' testimony was credible and that the information regarding the apparent improper registration of the vehicle license plate provided more than reasonable suspicion to justify an investigatory traffic stop of the vehicle. The Court notes that the chronology apparent from the documents produced at the hearing sufficiently corroborate the testimony of the police officers. The Court rejects Defendant's theory that the registration information was not obtained until after the stop had already occurred. The Court finds that the officers needed only a reasonable suspicion to initiate the investigatory stop, rather than actual probable cause. *United States v. Miguel*, 368 F.3d 1150 (9th Cir. 2004) (noting that mistake of fact regarding validity of vehicle registration does not render stop illegal). The observations of the behavior and movements of Defendant, and officer safety concerns, fully justified the search of the vehicle interior passenger compartment near Defendant for weapons. *Michigan v. Long*, 463 U.S. 1032, 1049-50 (1983); *United States v. Coker*, 2007 WL 931107 (3d Cir. March 29, 2007) (unpublished).

For the reasons set forth above, Defendant's MOTION TO SUPPRESS EVIDENCE (*Document No. 49*) is **DENIED**.

So **ORDERED** this 10th day of May, 2007.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc:   James Love, AUSA
      Email: james.love@usdoj.gov

      Linda E.J. Cohn, Esquire
      Email: linda_cohn@fd.org

---

baggy jeans before getting into the Ford Taurus, and that based on his training and experience, those movements were indicative of carrying a concealed handgun.